**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JELENA RADOVIC,**<br>1241 183rd Street<br>Homewood, IL 60430<br><br>    Plaintiff,<br><br> v.<br><br>**FREEDOM MORTGAGE**<br>**CORPORATION,**<br>℅ CT Corporation System, Registered Agent<br>208 South LaSalle St, Suite 814<br>Chicago, IL 60604<br><br>    Defendant. | Case No. 1:23-cv-00081<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff JELENA RADOVIC ("Plaintiff") makes this Complaint for compensatory and injunctive relief against FREEDOM MORTGAGE CORPORATION ("FMC" or "Defendant"), and states as follows:

**NATURE OF ACTION**

1. On March 19, 2019, Plaintiff entered a loan agreement for $100,880.00 to purchase residential property for personal and family use. FMC is the current servicer for the loan. In a billing statement dated August 18, 2022, FMC wrongly claims the loan is in default by $18,068.40. See EXHIBIT 1, (*August Billing Statement*).

2. FMC's claim about default is incorrect because the loan was placed in COVID-19 forbearance, and because the parties executed a loan modification agreement that requires FMC to add the suspended mortgage payments to the principal balance of the loan.

3. In November of 2020, Plaintiff's husband lost his job in a company-wide layoff related to COVID-19 and began presenting symptoms of bladder cancer. As a result of the

financial hardship, Plaintiff requested mortgage loan forbearance under the CARES Act and the Federal National Mortgage Association's ("FNMA") servicing guidelines.

4. After the forbearance period ended, FMC offered Plaintiff a permanent loan modification as required by the FNMA servicing guidelines – which Plaintiff accepted. In doing so, Plaintiff made three trial mortgage payments of $857.13 and signed a loan modification agreement. Yet FMC refuses to acknowledge the modification agreement despite receiving notice about the error from Plaintiff and uploading a copy of the document to Plaintiff's online account.

5. As a result of FMC's conduct, FMC has denied Plaintiff a valuable contract and escalated collection activity to include threats of judicial foreclosure. Plaintiff seeks relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., (Count I), Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C § 2601 *et seq*., (Count II), and Illinois Consumer Fraud Act ("Illinois CFA"), 815 ILCS 505 *et seq*., (Count III).

### PARTIES, JURISDICTION, AND VENUE

6. Plaintiff is a natural person and citizen of Illinois.

7. FMC is a mortgage servicing and financial services company headquartered in Mount Laurel, New Jersey.

8. Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA"), and Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq*.

9. This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

10. Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the property that is the subject of the action, is located within this District.

## FACTUAL ALLEGATIONS

11. On March 19, 2019, Plaintiff granted a mortgage interest to Key Mortgage Services to secure a $100,880.00 loan for residential property (the "mortgage loan"). The primary purpose of the mortgage loan was for personal, family, and household use. The Federal National Mortgage Association ("FNMA") claims an ownership interest in the mortgage loan.

12. FMC is the current servicer of the mortgage loan and services the mortgage loan on behalf of and at the behest of Fannie Mae. As part of FMC's contractual obligation with FNMA, FMC is required to follow the servicing rules located in FNMA's servicing guide. The FNMA servicing guide may be accessed at the following internet link: https://servicing-guide.fanniemae.com.

### Mortgage Loan Forbearance and Loan Modification

13. In late 2020, Plaintiff's husband lost his job because of a company-wide layoff related to COVID-19. Plaintiff's husband also began presenting symptoms of bladder cancer and was diagnosed by his primary care physician as likely having bladder cancer. These events created a financial hardship for the couple and their two small children.

14. At the time of the hardship, Roundpoint Mortgage Servicing Corporation ("RMSC") was the servicer for Plaintiff's mortgage loan.

15.     In November of 2020, Plaintiff contacted RMSC to request loan forbearance under the CARES Act and FNMA servicing guidelines because Plaintiff's COVID-19 financial hardship had impacted Plaintiff's ability to make regular mortgage payments.

16.     In December of 2020, Plaintiff's mortgage loan was placed in forbearance by RMSC as required by the CARES Act and FNMA servicing guidelines. Plaintiff's mortgage loan would remain in forbearance for about 14 months.

17.     By January of 2022, Plaintiff had resolved the COVID-19 hardship because Plaintiff's husband had found a new job. Additionally, after many months of waiting to see a specialist, Plaintiff learned that her husband had a rare vascular condition instead of bladder cancer. Plaintiff was ready and excited to make regular mortgage payments.

18.     In January of 2022, Plaintiff notified RMSC that she had resolved her financial hardship and sought a permanent loan modification.

19.     At the time of the notice, Plaintiff had almost exhausted the allowable forbearance under the CARES Act and the FNMA servicing guidelines of 15 months.

20.     By letter dated February 8, 2022, RMSC offered Plaintiff a permanent loan modification as required by the FNMA servicing guidelines. See EXHIBIT 2, (*Defendant's First Offer of Loan Modification Agreement*).

21.     The offer had a lower payment, lower interest rate, and longer term than Plaintiff's unmodified mortgage loan. To accept the offer, Plaintiff was required to make three (3) trial mortgage payments of $857.13 and return a signed loan contract ("Loan Modification Agreement"). See *Id*.

22.     Around this time, Plaintiff spoke to a phone representative from RMSC who stated the trial payment of $857.13 would be the same as Plaintiff's modified loan payment.

23. Plaintiff believed RMSC would be bound by the offer if Plaintiff made the trial payments and returned the Loan Modification Agreement.

24. Plaintiff based her belief on language in RMSC's offer letter, which included a two-step acceptance process, "Step 1: Make the Three Trial Payments" and "Step 2: Sign and Return the Loan Modification Agreement." See *Id*.

25. The offer letter did not state that Plaintiff would need to sign contracts in addition to the Loan Modification Agreement to receive a loan modification. See *Id*.

26. The FNMA's servicing guidelines do not require Plaintiff to sign contracts in addition to the Loan Modification Agreement to receive a loan modification.

27. After receiving the offer letter, Plaintiff took timely action to accept the offer by making the first trial payment of $857.13 by the given due date. Plaintiff further remitted the second and third trial payments of $857.13 by their respective due dates.

28. By letter dated April 13, 2022, RMSC notified Plaintiff that RMSC would transfer servicing rights for the mortgage loan to FMC on May 2, 2022. See EXHIBIT 3, (*Mortgage Servicing Transfer Notice*).

29. When RMSC transferred the serving rights to FMC, the account was in default by approximately $14,439.52 because the COVID-19 forbearance period had been exhausted and because the Loan Modification Agreement had not yet been executed.

30. By letter dated April 27, 2022, RMSC again offered Plaintiff the loan modification. RMSC states in the letter that RMSC is acting as "FREEDOM MORTGAGE CORPORATION, BY: ROUNDPOINT MORTGAGE SERVICING AS ITS ATTORNEY-IN-FACT." See EXHIBIT 4, (*Defendant's Second Offer of Loan Modification Agreement*).

31.     Plaintiff received the offer letter around May 2, 2022. The package containing the offer had been opened and was laying on Plaintiff's front porch.

32.     To accept the offer, FMC directed Plaintiff to "make all remaining trial period payments" and "sign and return both copies of the Loan Modification Agreement" in the pre-addressed envelope included with the offer by May 11, 2022. See *Id*.

33.     Since Plaintiff had completed the trial mortgage payments, Plaintiff believed FMC would be bound by the offer if she signed and returned the Loan Modification Agreement.

34.     Plaintiff based her belief on language in FMC's offer letter that described the conditions for acceptance, which include "To Accept This Offer" and "Sign and return both copies of the Loan Modification Agreement" and "Make all remaining trial period payments." See *Id*.

35.     The offer letter contained two enclosures, which the letter identifies as "Summary of Your Modified Mortgage, Two Copies of the Modification Agreement." The offer letter does not list or reference any other enclosures. See *Id*.

36.     The offer letter did not state that Plaintiff would need to sign contracts in addition to the Loan Modification Agreement to receive a loan modification. See *Id*.

37.     FNMA's servicing guidelines do not require Plaintiff to sign contracts other than the Loan Modification Agreement to receive a loan modification.

38.     On May 11, 2022, Plaintiff signed both copies of the Loan Modification Agreement before a notary public and returned the copies to FMC.

39.     When Plaintiff returned the Loan Modification Agreement to FMC, Plaintiff used FMC's pre-addressed envelope, which FMC had addressed to "Freedom Mortgage, 10500 Kincaid Drive, Fishers, Indiana 46037."

40.     Tracking details for the package show FMC received both copies of the Loan Modification Agreement on May 16, 2022.

**Defendant Fails to Honor the Loan Modification Agreement**

41.     By letter dated May 11, 2022, FMC notified Plaintiff that FMC was a debt collector, and that FMC was attempting to collect a debt to the FNMA for $109,048.06 with a past due balance of $15,341.99. See EXHIBIT 5, (*Defendant's Notice of Debt*).

42.     The notice stated that FMC would stop collection activity if Plaintiff disputed the debt in writing by June 20, 2022. See *Id*.

43.     By late May, FMC had still not updated Plaintiff's account to reflect the Loan Modification Agreement. Since FMC's payment system required a minimum payment of the alleged default of $15,341.99, Plaintiff was unable to make her $857.13 June payment.

44.     By letter dated May 25, 2022, Plaintiff sent her first written notice to FMC disputing the accuracy of FMC's records and disputing FMC's failure to service the modified mortgage loan ("May 25th NOE"). See EXHIBIT 6, (*May 25th Notice of Error*).

45.     Plaintiff addressed the May 25th NOE to FMC's designated address for processing a "notice of error" as defined by Regulation X. The May 25th NOE included Plaintiff's name, account number, and sufficient information for FMC to identify the account. See *Id*.

46.     FMC received the May 25th NOE on May 28, 2022. See EXHIBIT 7, (*May 25th Notice of Error Tracking Information*).

47.     By letter dated June 13, 2022, Plaintiff sent FMC a second notice disputing the accuracy of FMC's records and disputing FMC's failure to service the modified mortgage loan ("June 13th NOE"). Plaintiff cannot locate a copy of the June 13th NOE.

48.     Plaintiff addressed the June 13th NOE to FMC's designated address for processing a "notice of error" as defined by Regulation X. The June 13th NOE included Plaintiff's name, account number, and sufficient information for FMC to identify the account.

49.     FMC received the June 13th NOE on June 16, 2022. See EXHIBIT 8, (*June 13th Notice of Error Tracking Information*).

50.     By letter dated June 20, 2022, FMC told Plaintiff that the account was in default and demanded Plaintiff pay $16,244.46 by July 1, 2022.

51.     FMC sent the June 20th letter more than thirty days after receiving the signed Loan Modification Agreement and despite receiving two notices disputing the accuracy of FMC's records and FMC's failure to service the modified loan.

52.     On July 13, 2022, FMC uploaded a copy of the signed Loan Modification Agreement to Plaintiff's online account. The uploaded agreement shows FMC received both copies of the signed Loan Modification Agreement on May 16, 2022. See EXHIBIT 9, (*Loan Modification Agreement Uploaded on FMC's Website*).

53.     By letter dated July 13, 2022, FMC responded to the June 13th NOE. The letter states, "We received your request via 0000 on June 16, 2022." The letter does not define the numeric code "0000" and fails to acknowledge receipt of Plaintiff's May 25th NOE. See EXHIBIT 10, (*FMC's Response to June 13th Notice of Error*).

54.     The letter also states, "Our records do not indicate that your signed loan modification was sent to Freedom Mortgage." FMC's claim about receipt of the modification agreement is not plausible because FMC received the signed modification agreement and uploaded the agreement to Plaintiff's online account. See *Id*.

55.     By letter dated July 18, 2022, FMC told Plaintiff that the account was in default and demanded Plaintiff pay $17,165.93 by August 1, 2022.

56.     FMC sent the July 18th letter more than sixty days after receiving the signed Loan Modification Agreement and despite receiving two notices disputing the accuracy of FMC's records and FMC's failure to service the modified loan.

57.     By letter dated July 25, 2022, Plaintiff sent FMC a third notice disputing the accuracy of FMC's records and disputing FMC's failure to service the modified mortgage loan ("July 25th NOE"). See EXHIBIT 11, (*July 25th Notice of Error*).

58.     Plaintiff addressed July 25th NOE to FMC's designated address for processing a "notice of error" as defined by Regulation X. The July 25th NOE included Plaintiff's name, account number, and sufficient information for Defendant to identify the account. See *Id*.

59.     FMC received the July 25th NOE on August 2, 2022. See EXHIBIT 12, (July 25th Notice of Error Tracking Information).

60.     By letter dated August 25, 2022, FMC responded to the July 25th NOE. The letter states that an agent of FMC tried to call Plaintiff "to remind you to return the documents per the loss mitigation timeline to avoid denial." This statement disregards the substance of the July 25th NOE, which gave notice to FMC about FMC's failure to onboard loan documents that had already been returned. See EXHIBIT 13, (*FMC's Response to July 25th Notice of Error*).

61.     The letter also states, "we needed to schedule the notary." This statement is inaccurate because FMC's offer letter did not require FMC to schedule a public notary. See EXHIBIT 4, (*Defendant's Second Offer of Loan Modification Agreement*).

62.     When Plaintiff signed the Loan Modification Agreement, Plaintiff signed the agreement before the public notary that she had scheduled. FMC has possession of these documents, which have the official seal of the notary and date of the notarial act.

63.     By letter dated September 18th, 2022, Plaintiff sent FMC a fourth notice disputing the accuracy of FMC's records and disputing FMC's failure to service the modified mortgage loan ("September 18th NOE"). See EXHIBIT 14, (*September 18th Notice of Error*).

64.     Plaintiff addressed the September 18th NOE to FMC's designated address for processing a "notice of error" as defined by Regulation X. The September 18th NOE contained Plaintiff's name, account number, and sufficient information for FMC to identify the account. See *Id*.

**Impact and Damages to Plaintiff**

65.     Under the Loan Modification Agreement, Plaintiff pays a modified interest rate of 3.125%. However, FMC continues to assess interest at the pre-modified rate of 4.5% despite Plaintiff's acceptance of the modified agreement. As of the date of the filing of this Complaint, FMC claims Plaintiff owes approximately $18,068.40 in overdue mortgage payments.

66.     FMC caused Plaintiff financial harm by failing to apply the modified interest rate of 3.125% to the loan – which will cost Plaintiff approximately $30,728.79 over the remainder of the unmodified payment term. The additional interest debt has already begun to accrue.

67.     FMC caused Plaintiff financial harm by failing to modify the original loan repayment schedule – under which approximately $18,068.40 in overdue mortgage payments must be paid immediately to avoid acceleration of the loan and judicial foreclosure.

68. FMC caused Plaintiff other financial costs, which include costs for certified mailings, costs for drafting notices of error, costs for delivering notices of error, opportunity costs of paid work or leisure, and the cost to retain and hire an attorney.

69. Plaintiff sought mortgage relief under the CARES Act and FNMA servicing guidelines to overcome a COVID-19 financial hardship. FMC's mishandling of Plaintiff's loan forbearance through its agent and mishandling of the loan modification have exacerbated the hardship and caused Plaintiff mental anguish and distress.

70. FMC caused Plaintiff anguish and distress by detracting from her family commitments, work commitments, and leisure time. Since Plaintiff and her husband have full-time jobs and two young children, Plaintiff's efforts to resolve FMC's failure to service the modified loan placed unnecessary strain on Plaintiff's time and emotional resources.

71. FMC caused Plaintiff anguish and distress by creating financial uncertainty. Since bargains like the Loan Modification Agreement do not exist on the current loan market, FMC's conduct places Plaintiff in great fear of irreparable financial loss.

72. FMC caused Plaintiff anguish and distress by questioning the existence of the signed Loan Modification Agreement. Since the Loan Modification Agreement has been uploaded by FMC and unquestionably exists, FMC's failure to acknowledge basic facts related to Plaintiff's personal and financial well-being has caused Plaintiff intense frustration.

73. FMC caused Plaintiff anguish and distress by threatening to accelerate the loan balance and begin a judicial foreclosure. As a result, FMC's failure to service the modified loan has placed Plaintiff in fear of losing her home, fear of losing access to neighborhood grade schools, and fear of financial instability. See EXHIBIT 15, (*FMC's Demand Letter*).

**Pattern and Practice of Regulation X Violations by Defendant**

74. Defendant's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in contravention of Defendant's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

75. As of the filing of this Complaint, consumers nationwide have lodged fifty one (51) consumer complaints with the Consumer Financial Protection Bureau ("CFPB") against Defendant on the issue of "loan modification, collection, foreclosure" specifically concerning mortgage loans Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

76. As of the filing of this Complaint, consumers nationwide have lodged two hundred ninety-nine (299) consumer complaints with the CFPB on the issue of "loan servicing, payments, escrow account" specifically concerning mortgage loans. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

**COUNT I:**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**(Violation of 15 U.S.C. § 1692 *et seq*.)**

77. Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 76 in their entirety, as if fully rewritten herein.

78. Plaintiff is a "consumer" as defined by the FDCPA.

79. Defendant is a "debt collector" as defined by the FDCPA.

80. Defendant violated the FDCPA at 15 U.S.C. § 1692e in a manner including but not limited to the following:

a. Defendant made false or misleading representations about the amount and character of Plaintiff's mortgage debt by sending Plaintiff statements that indicate the mortgage loan was in default, rather than modified and current, after Defendant completed the trial period payments and returned both copies of the signed Loan Modification Agreement; and,

b. Defendant made false or misleading representations about the legal status of Plaintiff's mortgage debt by communicating to Plaintiff that Plaintiff's failure to pay overdue mortgage payments,which were not in fact due and owing, may result in acceleration of the mortgage loan and judicial foreclosure and sale of the property.

81. Defendant violated the FDCPA at 15 U.S.C. § 1692f in a manner including but not limited to the following:

a. Defendant imposed interest and fees on the mortgage loan that are not authorized by the Loan Modification Agreement;

b. Defendant threatened Plaintiff with acceleration of the mortgage loan and judicial foreclosure despite notice from Plaintiff that Defendant has failed to service the mortgage loan in accordance with the modified loan terms; and,

c. Defendant failed to perform under the terms of the Loan Modification Agreement despite Plaintiff's acceptance of Defendant's offer to be bound by the terms of the Loan Modification Agreement.

82. Defendant violated the FDCPA at 15 U.S.C. § 1692g in a manner including but not limited to the following:

a. Defendant failed to stop attempting to collect the disputed mortgage debt after receiving Plaintiff's first written notice disputing the debt; and,

b. Defendant failed to obtain verification of the mortgage debt before continuing to attempt to collect the mortgage debt.

83. As a result of Defendant's conduct, Plaintiff suffered economic harm in the form of increased interest costs, late fees, overdue payments that require immediate payment, legal expenses, certified mail expenses, lost time, opportunity cost, and the otherwise loss of a valuable contract. Plaintiff could not avoid the economic harm caused by Defendant's conduct because Plaintiff fulfilled all the conditions for acceptance of the loan modification offer, but Defendant fails to acknowledge Plaintiff's acceptance of the offer despite Plaintiff's notice.

84. As a result of Defendant's conduct, Plaintiff suffered anguish and distress in the form of suffering caused by lost time, opportunity cost, suffering caused by financial uncertainty, suffering caused by Defendant's knowing disregard of the Loan Modification Agreement, and suffering caused by Defendant's threats of loan acceleration and judicial foreclosure. Plaintiff could not avoid the emotional harm caused by Defendant's conduct because Plaintiff fulfilled all the conditions for acceptance of the loan modification offer, but Defendant fails to acknowledge Plaintiff's acceptance of the offer despite Plaintiff's notice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Award damages, including compensatory and statutory, to Plaintiff in an amount determined at trial;

B. Enter an Order for Defendant to stop collection efforts on the debt until Defendant obtains a verification of the debt;

C.     Award Plaintiff expenses and costs for the suit, including reasonable attorney fees to the extent provided by law;

D.     Award prejudgement and postjudgment interest to the extent provided by law; and,

E.     Award such further relief as the Court deems appropriate.

**COUNT II:**
**VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**

**(Violations of 12 U.S.C. § 2605(k)and 12 C.F.R. 1024.35)**

85.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 76 in their entirety, as if fully rewritten herein.

86.     RESPA provides that servicers of federally related mortgages are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

87.     RESPA provides that servicers of federally related mortgages are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

88.     The CFPB issued final rules concerning mortgage markets, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law No. 111-203, 124 Stat. 1376 (2010), specifically the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 ("Regulation X") (February 14, 2013) which became effective on January 10, 2014.

89.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

90.     Defendant is a "servicer" as defined by Regulation X at 12 C.F.R. § 1024.2 *et seq*.

91.     Defendant is not a "qualified lender", as defined in 12 C.F.R. § 617.700 *et seq*.

92.     The mortgage loan is a "federally related mortgage loan" as defined by Regulation X at 12 C.F.R. § 1024.2 *et seq*.

93.     The May 25th NOE is a "notice of error" as defined by 12 C.F.R. § 1024.35(a) because it is a written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

94.     The June 13th NOE is a "notice of error" as defined by 12 C.F.R. § 1024.35(a) because it is a written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

95.     The July 25th NOE is a "notice of error" as defined by 12 C.F.R. § 1024.35(a) because it is a written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

96.     The September 18th NOE is a "notice of error" as defined by 12 C.F.R. § 1024.35(a) because it is a written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

97.     A servicer must respond to a notice of error by either:

(A)     Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)     Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); see also 12 U.S.C. § 2605(e)(2)(B).

98.     A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A)     Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)     Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)     For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); see also 12 U.S.C. § 2605(e)(2).

99.     FMC received the May 25th NOE, the June 13th NOE, the July 25th NOE, and the September 18th NOE (collectively (the "NOEs") at FMC's designated address for processing a "notice of error" as defined by Regulation X.

100.    FMC responded to the June 13th NOE through correspondence dated July 13th NOE.

101.    FMC failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as FMC did not admit that any errors occurred as alleged through the June 13th NOE.

102.    FMC did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the face of the July 13th correspondence that FMC did not perform a reasonable investigation into the errors alleged through the June 13th NOE.

103.    Specifically, FMC stated no error occurred because "[its] records do not indicate that your signed loan modification was sent to Freedom Mortgage", but this claim is not plausible because FMC received the signed modification agreement and uploaded the agreement to Plaintiff's online account.

104.    FMC responded to the July 25th NOE through correspondence dated August 25th NOE.

105.    FMC failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as FMC did not admit that any errors occurred as alleged through the July 25th NOE.

106.    FMC did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the face of the August 25th correspondence that FMC did not perform a reasonable investigation into the errors alleged through the July 25th NOE.

107.    Specifically, FMC stated no error occurred because an agent of FMC tried to call Plaintiff "to remind [her] to return the documents per the loss mitigation timeline to avoid denial", but this disregards the substance of the July 25th NOE, providing notice to FMC about FMC's failure to onboard loan documents that had already been returned and uploaded to Plaintiff's online account.

108.    FMC failed to provide any substantive response to either the May 25th NOE or the September 18th NOE, or otherwise failed to either correct the errors alleged therein or perform a reasonable investigation into such errors.

109.    FMC's failure to timely and properly respond to each of the NOEs by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through each of the NOEs constitute four (4) separate and distinct violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Plaintiff has suffered actual damages as detailed, *supra*.

110.    Defendant's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights under RESPA and Regulation X.

111.    As a result of Defendant's conduct, Plaintiff suffered economic harm in the form of costs for drafting notices of error and delivering the notices by certified mail. Plaintiff's September 4th notice was sent with the assistance of counsel and therefore made with additional expense. The June 13th NOE, the July 25th NOE, and the September 18th NOE would not have been necessary but for Defendant's failure to properly respond to the May 25th NOE.

112.    Additionally, as the result of Defendant's conduct, Plaintiff suffered economic harm in the form of increased interest costs, late fees, overdue payments that require immediate payment, legal expenses, lost time, opportunity cost, and the otherwise loss of a valuable contract. Plaintiff could not avoid the economic harm caused by Defendant's conduct because Plaintiff fulfilled all the conditions for acceptance of the loan modification offer, but Defendant fails to acknowledge Plaintiff's acceptance of the offer despite Plaintiff's notice.

113.    As a result of Defendant's conduct, Plaintiff suffered anguish and distress in the form of suffering caused by lost time, opportunity cost, suffering caused by financial uncertainty,

suffering caused by Defendant's knowing disregard of the Loan Modification Agreement, and suffering caused by Defendant's threats of loan acceleration and judicial foreclosure. Plaintiff could not avoid the emotional harm caused by Defendant because Plaintiff fulfilled all the conditions for acceptance of the loan modification offer, but Defendant fails to acknowledge Plaintiff's acceptance of the offer.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court:

A.  Award damages, including compensatory and statutory, to Plaintiff in an amount determined at trial;

B.  Award Plaintiff expenses and costs for the suit, including reasonable attorney fees to the extent provided by law;

C.  Award prejudgement and postjudgment interest to the extent provided by law; and,

D.  Award such further relief as the Court deems appropriate.

**COUNT III:**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT**

**(Violation of 815 ILCS 505 *et seq*.)**

114.    Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 76 in their entirety, as if fully rewritten herein.

115.    Defendant's conduct occurred in "trade" or "commerce" as defined by the Illinois CFA.

116.    Defendant violated the Illinois CFA at 815 ILCS 505/2 because Defendant's practice was "deceptive" and "unfair" under Illinois law, FTC interpretations, and federal court rulings in a manner including but not limited to the following:

a. Defendant offered Plaintiff a loan modification agreement but failed to honor Plaintiff's acceptance of the offer; and in doing so, Defendant caused unavoidable and substantial harm to Plaintiff without a countervailing commercial purpose.

b. Defendant's July 13th Response states "Our records do not indicate that your signed loan modification was sent to Freedom Mortgage" despite Defendant having received the signed Loan Modification Agreement and having uploaded the agreement to Plaintiffs account; and in doing so, Defendant concealed material facts about the legal status of a valuable contract.

c. Defendant's August 25th Response fails to acknowledge Defendant's receipt of the signed Loan Modification Agreement and demands additional notary requirements that were not included in Defendant's offer to modify the loan; and in doing so, Defendant concealed material facts about the legal status of a valuable contract and conditions for acceptance of the contract.

d. Defendant intended for Plaintiff to rely on the concealment of material facts about the legal status of the Loan Modification Agreement and Defendant's receipt of the Loan Modification Agreement.

e. Plaintiff relied on Defendant's concealment of material facts; and,

f. Defendant's conduct was materially misleading from the perspective of a reasonable consumer, caused substantial injury, violated established public policy, and was unethical and oppressive.

117.    As a result of Defendant's conduct, Plaintiff suffered economic harm in the form of increased interest costs, late fees, overdue payments that require immediate payment, legal expenses, certified mail expenses, lost time, opportunity cost, and the otherwise loss of a

valuable contract. Plaintiff could not avoid the economic harm caused by Defendant's conduct because Plaintiff fulfilled all the conditions for acceptance of the loan modification offer, but Defendant fails to acknowledge Plaintiff's acceptance of the offer despite Plaintiff's notice.

118.   As a result of Defendant's conduct, Plaintiff suffered anguish and distress in the form of suffering caused by lost time, opportunity cost, suffering caused by financial uncertainty, suffering caused by Defendant's knowing disregard of the Loan Modification Agreement, and suffering caused by Defendant's threats of loan acceleration and judicial foreclosure. Plaintiff could not avoid the emotional harm caused by Defendant's conduct because Plaintiff fulfilled all the conditions for acceptance of the loan modification offer, but Defendant fails to acknowledge Plaintiff's acceptance of the offer despite Plaintiff's notice.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that the Court:

A.  Award damages, including compensatory, statutory, and punitive damages, to Plaintiff in an amount determined at trial;

B.  Enter an Order for Defendant to service the modified mortgage loan;

C.  Award Plaintiff expenses and costs for the suit, including reasonable attorney fees to the extent provided by law;

D.  Award prejudgement and postjudgment interest to the extent provided by law; and

E.  Award such further relief as the Court deems appropriate.

DATED: January 6, 2023                     Respectfully submitted,

                                           /s/Brian D. Flick, Esq.
                                           Marc E. Dann (OH #0039425)
                                           Brian D. Flick (OH #0081605)
                                           DannLaw
                                           15000 Madison Avenue
                                           Lakewood, OH 44107

Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com

Adam P. Stone (IL 6329346)
ADVOCATE ATTORNEYS LLP
15000 Madison Avenue
Lakewood, OH 44107
astone@advocateattorneys.com

*Counsel for Plaintiff Jelena Radovic*

## JURY DEMAND

Plaintiff Jelena Radovic hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/Brian D. Flick, Esq.
Marc E. Dann (OH #0039425)
Brian D. Flick (OH #0081605)
DannLaw
*Co-counsel for Plaintiff*